UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JEMMY JIMENEZ ROSA,<br>  *Petitioner*,<br><br>v.<br><br>RODNEY SCOTT, Commissioner, U.S. Customs and Border Patrol, PATRICIA HYDE, Field Office Director, TODD LYONS, Acting Director U.S. Immigration and Customs Enforcement, KRISTI NOEM, U.S. Secretary of Homeland Security, PAM BONDI, U.S. Attorney General, DONALD J. TRUMP, President of the United States of America<br>  *Respondents*. | C.A. No. 25-12263<br><br>**PETITION FOR WRIT OF HABEAS CORPUS** |

**PETITION FOR WRIT OF HABEAS CORPUS**

1. Petitioner Jemmy Lindsay Jimenez Rosa is a lawful permanent resident of the United States.

2. Ms. Jimenez Rosa is a mother of four (4) U.S. citizen children. She raises and cares for these children with her U.S. citizen husband, Marcel Rosa. Ms. Jimenez Rosa works in Massachusetts for the Boston University Henry M. School of Dental Medicine as the Oral and Maxillofacial Surgery Senior Clinical Coordinator.

3. Ms. Jimenez Rosa is 42 years old. She is originally from Peru. She arrived in the United States when she was 12 years old, in the year 2000. She received lawful permanent resident status at that time. She has been a lawful permanent resident since March 18, 1992, or 33 years.

4. In 2003, a District Court in Roxbury, Massachusetts convicted Ms. Jimenez Rosa of misdemeanor possession of a class D controlled substance (marijuana). Beyond this, Ms. Jimenez has no criminal record.

5. On March 13, 2025, Massachusetts Governor Maura Healy announced a pardon for all adult Massachusetts state court misdemeanor convictions before March 13, 2024 for possession of marijuana. The Massachusetts Governor's Council approved the pardon action on April 4, 2024.

6. Since Ms. Jimenez Rosa received her green card, she has repeatedly traveled internationally and returned to the United States without incident.

7. Ms. Jimenez Rosa recently traveled to Mexico for a family reunion with her husband and three of her children. She returned to Logan International Airport on or about August 11, 2025.

8. Upon arrival at Logan, U.S. Customs and Border Protection ("CBP") held Ms. Jimenez Rosa at the airport secondary screening station overnight for approximately 18 to 36 hours. CBP did not provide Ms. Jimenez Rosa with any food during this time.

9. To the knowledge and belief of counsel for Ms. Jimenez Rosa, she remains in the custody of CBP.

10. At this time, the Department of Homeland Security ("the Department") has not provided Ms. Jimenez Rosa with a Notice to Appear ("NTA") or any other charging document explaining the basis for her detention.

11. As a lawful permanent resident with a single misdemeanor conviction, Ms. Jimenez Rosa believes that CBP detained her due to her pardoned 2003 conviction.

12. Ms. Jimenez Rosa suffers from multiple health conditions that often require immediate medical attention, including asthma and diabetes.

13. While in CBP custody, Ms. Jimenez Rosa suffered an anxiety attack. CBP then transferred her to a local hospital.

14. At or around 2:00 am on August 12, 2025, Marcel Rosa received a call informing her that the hospital was releasing Ms. Jimenez Rosa back into DHS custody. Her family has not heard from her since.

15. On information and belief, the federal government has been aware of these alleged offenses since and has renewed her lawful permanent resident status after them. The government has never before imprisoned Ms. Jimenez Rosa or sought her deportation.

16. To the contrary, Ms. Jimenez Rosa has successfully renewed her green card multiple times since 1992, and has repeatedly traveled outside the United States and returned without incident.

17. Ms. Jimenez Rosa remains in the custody of the Department.

18. Ms. Jimenez Rosa is held in violation of her due process rights, as she has not been informed of any violation of law justifying her detention.

19. Immigration detention is a form of civil confinement and must serve one or both of two regulatory goals: ensuring appearance at future immigration proceedings, and preventing danger to the community. *See Zadvydas v. Davis*, 533 U.S. 678, 690 (2001); *see also Demore v. Kim*, 538 U.S. 510, 532-33 (2003) (Kennedy, J., concurring).

20. Ms. Jimenez Rosa has never received an individualized determination of whether she should be detained for the duration of her immigration proceedings due to flight risk or danger to the community.

21. Ms. Jimenez Rosa is not a flight risk. Ms. Jimenez Rosa is not dangerous.

22. Ms. Jimenez Rosa's continued detention does not serve the regulatory goals of immigration detention.

23. Ms. Jimenez Rosa's continued detention is contrary to the public interest.

24. This Court has subject matter jurisdiction under 28 U.S.C. § 2241 (habeas corpus) and 28

U.S.C. § 1331 (federal question).

25. Venue is proper because Petitioner's immediate custodian is located in the District of Massachusetts, and Petitioner is detained in the District of Massachusetts.

26. Respondent Rodney Scott is the Commissioner for U.S. Customs and Border Patrol.

27. Respondent Patricia Hyde is the New England Field Office Director for U.S. Immigration and Customs Enforcement.

28. Respondent Todd Lyons is the Acting Director for U.S. Immigration and Customs Enforcement.

29. Respondent Kristi Noem is the U.S. Secretary of Homeland Security.

30. Respondent Pam Bondi is the U.S. Attorney General.

31. Respondent Donald J Trump is the 47th President of the United States of America. All respondents are named in their official capacities.

32. Ms. Jimenez Rosa is currently in custody in the District of Massachusetts, and one or more of the Respondents is her immediate custodian.

## CLAIMS FOR RELIEF

### COUNT ONE: Violation of Fifth Amendment Right to Due Process

33. Returning lawful permanent residents, like Ms. Jimenez Rosa have a constitutional right not to be deprived of life, liberty, or property without due process of law. *See* U.S. Const. amend. V; *Landon v. Plasencia*, 459 U.S. 21, 32-34 (1982); *Kwong Hai Chew v. Colding*, 344 U.S. 590, 595-601 (1953).

34. On information and belief, Ms. Jimenez Rosa is currently being arrested and detained by federal agents without cause and in violation of her constitutional rights to due process of law.

35. Immigration detention is a form of civil confinement and must serve one or both of two regulatory goals: ensuring appearance at future immigration proceedings, and preventing

4

danger to the community.

36. Ms. Jimenez Rosa is being subjected to unjustified detention under and cannot receive an individualized hearing to determine if her detention is necessary to ensure her appearance at immigration proceedings or to protect the community, because she is not in removal proceedings.

37. Ms. Jimenez Rosa is 42 years old and a mother of four U.S. citizens. She has been a lawful permanent resident for roughly 33 years. She is not a danger, and she presents no risk of flight. The Government's prior course of conduct acknowledged that her misdemeanor charge does not represent any risk of flight or danger to the community.

38. For a person in Ms. Jimenez Rosa's circumstances, detention does not advance the regulatory goals of civil immigration detention. *See Zadvydas*, 533 U.S. at 690; *see also Demore*, 538 U.S. at 532-33 (Kennedy, J., concurring). The Government was aware of the convictions that purportedly form its determination to detain the petitioner when she renewed her green card and when she returned to the United States after prior travel and did not initiate removal proceedings against her. *See Perera v. Jennings*, 598 F. Supp. 3d 736, 744-46 (N.D. Cal. 2022) (holding that mandatory detention under 8 U.S.C. § 1226(c) is unconstitutional as applied to LPR whom ICE knew was removable, yet allowed his to live and work in the community for six years).

39. For a person in Ms. Jinenez Rosa's circumstances, detention without any individualized process also does not satisfy the procedural due requirements of *Mathews v. Eldridge*, 424 U.S. 319 (1976). First, she has a weighty liberty interest to be free from custody, and to live and work in the United States and to rejoin her family. *See Landon*, 459 U.S. at 34; *Hernandez-Lara v. Lyons*, 10 F.4th 19, 28 (1st Cir. 2021) ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects") (quoting *Zadvydas*, 533 U.S. at 695). Second, there is a risk of erroneous deprivation since there will be no individualized

5

determination of whether she is a danger or flight risk. In *Hernandez-Lara*, the First Circuit concluded that misallocating the burden of proof in bond hearings amounted to rolling "loaded dice," and created a high risk of erroneous deprivation of liberty. *See* 10 F.4th at 32. That reasoning is amplified here, as Ms. Jimenez Rosa will receive no bond hearing. Third, the Government has no interest in the blanket detention of Ms. Jimenez Rosa without establishing dangerousness or a risk of flight, when the sole basis for her detention is a twenty-two-year-old misdemeanor conviction, and the Government has had multiple opportunities to detain her for removal but chose not to. *See Hernandez-Lara*, 10 F.4th at 32-33; *id.* at 33 ("limiting the use of detention to only those noncitizens who are dangerous or a flight risk may save the government, and therefore the public, from expending substantial resources on needless detention").

40. For all the foregoing reasons, as applied to Ms. Jimenez Rosa, mandatory or discretionary detention violates the Due Process Clause of the Fifth Amendment to the United States Constitution.

41. Should this Court hold a bond hearing or alternatively require that the immigration judge hold a bond hearing, due process requires that the Government prove that Ms. Jimenez Rosa is a danger by clear and convincing evidence and a flight risk by preponderance of the evidence. The Government must prove by clear and convincing evidence that no reasonable alternative to detention existed that would ensure the safety of the community, and by preponderance of the evidence that conditions of release cannot ensure Ms. Jimenez Rosa's return to court, and the court must inquire into her ability to pay. *See Brito v. Barr*, 415 F. Supp. 3d 258, 266-70 (D. Mass. 2019) (holding that at § 1226(a) bond hearings, the Government must bear the burden of proof and the IJ must consider alternatives to detention and a detainee's ability to pay), *aff'd in part*, *vacated in part*, *remanded by Brito v. Garland*, 22 F.4th 240, 252 (2021);[2] *Doe v. Tompkins*, No. 18-12266-PBS, 2019 U.S. Dist. LEXIS 22616, at *5 (D. Mass. Feb. 12, 2019) (holding that the immigration court should properly

allocate the burden of proof and consider alternatives to detention to ensure the safety of the community and the petitioner's future appearances), *aff'd*, 11 F.4th 1 (1st Cir. 2021); *Hernandez v. Sessions*, 872 F.3d 976, 991 (9th Cir. 2017) ("A bond determination process that does not include consideration of financial circumstances and alternative release conditions is unlikely to result in a bond amount that is reasonably related to the government's legitimate interests."); *Ousman D. v. Decker*, Civil No. 20-9646 (JMV), 2020 U.S. Dist. LEXIS 171243, at *9–10 (D.N.J. Sept. 18, 2020) (bond hearing failed to comply with due process where immigration judge did not consider less restrictive alternatives to detention); *Hechavarria v. Whitaker*, 358 F. Supp. 3d 227, 241-42 (W.D.N.Y. 2019) (holding that due process requires immigration judge to consider whether less restrictive alternatives to detention would address the Government's legitimate purposes); *Reid v. Donelan*, 390 F. Supp. 3d 201, 225 (D. Mass. 2019) (holding that Due Process requires the IJ to consider alternatives to detention and a detainee's ability to pay and explaining "this requirement guarantees that the decision to continue to detain a criminal alien is reasonably related to the Government's interest in protecting the public and assuring appearances at future proceedings"), *aff'd in part, vacated in part, remanded by Reid v. Donelan*, 17 F.4th 1, 12 (1st Cir. 2021);[3] *Davis v. Garland*, No. 22-CV-443-LJV, 2023 U.S. Dist. LEXIS 20490 (W.D.N.Y. Feb. 7, 2023) ("[T]he decisionmaker must consider—and must address in any decision—whether there is clear and convincing evidence that there are no less-restrictive alternatives to physical detention, including release on conditions, that could reasonably address the government's interest in detaining [the petitioner]."); *O.F.C. v. Decker*, No. 22 Civ. 2255, 2022 U.S. Dist. LEXIS 177255, at *35 (S.D.N.Y Sept. 12, 2022) (finding that the IJ must consider alternative conditions of release in determining whether to grant bond) (In 2021, the First Circuit affirmed in part, vacated in part, and remanded the District Court's 2019 *Reid* decision. *See Reid v. Donelan*, 17 F.4th 1, 12 (1st Cir. 2021)

7

42. The First Circuit, in *Brito v. Garland*, did not affirm the District Court's holdings with respect to requiring IJs to consider alternatives to detention and a detainee's ability to pay. *See* 22 F.4th at 252-56. The First Circuit did not opine on the merits of these constitutional claims, but rather reversed because petitioners had not exhausted the alternatives-to-detention claim before the IJ, and the named plaintiffs did not have standing to address the ability to pay claim. *Id.* The First Circuit noted, "it is easy to see how conditions of release might shape an immigration judge's determination as to whether a noncitizen poses a flight risk or danger." *Id.* at 254. However, the First Circuit affirmed only as to the "judgment against the class rejecting the claim that persons detained for six months under section 1226(c) are automatically entitled to a hearing before an IJ that might lead to their release on bond pending the conclusion of removal proceedings." *See id.* at 12. The decision held that the district court impermissibly issued declaratory and injunctive relief, and that the district court erred in using the "class as a bootstrap to then adjudicate, on a class-wide basis, claims that hinge on the individual circumstances of each class member." *Id.* at 9-12.

43. Notably, the First Circuit did not rule on the constitutionality of the procedural protections granted to class members by the District Court. Rather, the First Circuit rejected that the District Court could order such procedural protections outside of the context of an individual habeas petition. *See id.* at 11. Although the District Court's 2019 *Reid* decision is no longer binding, much of the rationale employed by the District Court in its holding setting forth the burden and standards of proof at § 1226(c) bond hearings protections follows the rationale utilized by the First Circuit in *Hernandez-Lara* to hold that Due Process requires the government to bear the burden of proof at § 1226(a) bond hearings. *See Hernandez-Lara*, 10 F.4th at 28-41; Reid, 819 F.3d at 224-25.

**PRAYER FOR RELIEF**

Wherefore, Petitioner respectfully requests this Court to grant the following:

(1) Retain jurisdiction over this matter.

(2) Maintain all current orders and the current schedule in this case, including the Order prohibiting Respondents from transferring Ms. Jimenez Rosa without notice (ECF No. 4), the Order requiring Respondents to respond to the Petition by April 14, 2024 (ECF No. 8), and the Order setting a hearing for April 17, 2025 (ECF No. 9).

(3) While this Petition is pending, grant Ms. Jimenez Rosa release on bail and any conditions that the Court deems appropriate, pending final adjudication of this Petition. *See Savino v. Souza*, 453 F. Supp. 3d 441, 453-54 (D. Mass. 2020) (citing *Mapp v. Reno*, 241 F.3d 221, 223 (2d Cir. 2001)).

(4) Declare that Ms. Jimenez Rosa's detention violates the Due Process Clause of the Fifth Amendment.

(5) Issue a Writ of Habeas Corpus ordering Respondents to release Ms. Jimenez Rosa, if necessary including any terms and conditions of release that the Court deems appropriate after an individualized hearing.

(6) Alternatively, order a constitutionally adequate bond hearing to be held promptly before an Immigration Judge, at which the Government bears the burden of proving either by clear and convincing evidence that her detention is necessary to protect the community from harm or by preponderance of the evidence that her detention is justified to ensure her appearance for her removal proceedings; and even if it is, that no condition or combination of conditions, such as alternatives to detention, can reasonably assure her future appearance and safety of the community; and finally, that if bond is set, the Immigration Judge be required to consider Petitioner's ability to pay in setting any bond amount.

(7) Issue an award of attorneys' fees and costs in accordance with the Equal Access to Justice Act and any other appropriate relief the Court feels is just and proper.

|  |  |
|---|---|
|  | Respectfully submitted, |
| Date: August 12, 2025 | /s/Jemmy Jimenez Rosa<br>Jemmy Jimenez Rosa |
|  | */s/Todd C. Pomerleau*<br>Todd C. Pomerleau, Esq.<br>Rubin Pomerleau, P.C.<br>Two Center Plaza, Suite 520<br>Boston, Massachusetts 02108<br>Tel.: (617) 367-0077<br>Fax: (617) 367-0071<br>rubinpom@rubinpom.com<br>MA BBO#664974 |
|  | *Counsel for Petitioner* |

**CERTIFICATE OF SERVICE**

    I hereby certify that on August 12, 2025, a true copy of the above document was filed via the Court's CM/ECF system and that a copy will be sent automatically to all counsel of record.

August 12, 2025

                                             /s/*Todd C. Pomerleau*
                                             Todd C. Pomerleau
                                             Rubin Pomerleau, P.C.
                                             Two Center Plaza, Suite 520
                                             Boston, Massachusetts 02108
                                             Tel.: (617) 367-0077
                                             Fax: (617) 367-0071
                                             rubinpom@rubinpom.com
                                             MA BBO#664974